UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL CASE NO. 22-cr-326-RBW |
| | : | |
| JAMES BRADLEY, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

From approximately October 2016 through May 2018, defendant James Bradley helped to embezzle approximately $205,421.82 from the American Federation of Government Employees ("AFGE"). He did so by enabling co-conspirator Donnell Owens—who worked at AFGE as a Secretary to the Director of Communications during the relevant period—to submit false and fraudulent check requests and invoices for non-existent videography services that the defendant did not actually provide to AFGE. As compared to Owens, the defendant had a minor role in the embezzlement scheme. Nonetheless, his knowing, willful, and voluntary actions helped to exploit AFGE's trust in Owens, and AFGE suffered financial hardship because of the defendant's participation in the crime. The government recommends that the Court sentence the defendant to a within-guidelines term of 15 months, followed by three years of supervised release, with $205,421.82 in restitution, $205,421.82 in a forfeiture money judgment, and a $100 special assessment.[1] Such a sentence would be sufficient but not greater than necessary to comply with the purposes of sentencing.

---

[1] The government asks that restitution be joint and several with Donnell Owens, who was previously sentenced in related case *U.S. v. Owens*, 21-cr-602-RBW, and with Stacy Staples, who was previously sentenced in related case *U.S. v. Staples*, 22-cr-266-RBW.

**I.     Factual Background**

As noted in the statement of offense (ECF No. 7) and Presentence Investigation Report ("PSR") (ECF No. 17), the defendant was a known associate of co-conspirator Owens, who was permanently hired by AFGE in October 2014 as a Secretary to the Director of Communications. Shortly thereafter, by July 2015, Owens began his multi-pronged embezzlement scheme, which he continued through his termination in June 2018.

In October 2016, the defendant knowingly, willfully, and voluntarily joined Owens in the fraud, agreeing to execute the embezzlement scheme and to take specific steps in furtherance thereof—that is, to obtain money from AFGE under false pretenses, for work the defendant did not perform. His role in the scheme was that of a purported vendor for AFGE, which as he knew, Owens then submitted thirty-four false and fraudulent check requests and invoices to AFGE for payments related to videography services that were purportedly provided by the defendant as an alleged AFGE vendor. However, as the defendant knew, AFGE never approved him as a vendor, and these check requests listed fictitious dollar amounts for fake work assignments he supposedly performed for AFGE. Accordingly, no such services were provided or, to the extent that they were provided, the services were performed by legitimate AFGE employees or vendors who were not involved in the scheme, rather than by the defendant.

For his role in the scheme, AFGE's accounting department authorized payments to the defendant totaling approximately $205,421.82. The defendant knowingly and willfully received and accepted each payment, keeping a portion of the fraudulently-obtained funds for himself, and providing the other portion of the funds to Owens per their unlawful plan.

Notably, the defendant also took affirmative steps designed to enable AFGE to pay him, and to lead AFGE to believe that he was, and intended to be, a legitimate vendor to whom AFGE disbursed funds in exchange for real work. For example, he sent an email to Owens's AFGE account requesting payment for "services rendered" in connection with a purported videography project he did for AFGE. Owens then forwarded the email to AFGE's accounting department to prompt faster processing of the fraudulent check request. The next day as part of the same email chain, upon receiving an email from Owens informing him that payment would be issued the following day, the defendant responded, in part, "I must be candid and say that it is very important that I receive payment by COB today. I have worked with your company on several project[s]."

**Procedural Background**

To his credit, the defendant admitted responsibility before he was criminally charged and agreed to plead guilty to one count of Conspiracy to Commit Embezzlement and Theft of Labor Union Assets, 18 U.S.C. § 371. An information was filed on September 29, 2022, and the defendant promptly pleaded guilty on November 7, 2022.[2]

As the parties noted in the plea agreement, Conspiracy to Commit Embezzlement and Theft of Labor Union Assets carries a maximum sentence of five years of imprisonment; a fine of $250,000 or twice the pecuniary gain or loss of the offense, pursuant to 18 U.S.C. §§ 3571(b)(3); a term of supervised release of not more than three years, pursuant to 18 U.S.C. § 3583(b)(2);

---

[2] For ease of reference, as previously noted in the statement of offense (at 1), to prove a violation of Conspiracy to Commit Embezzlement and Theft from a Labor Organization (29 U.S.C. § 501(c)), the government must prove the following elements: (1) that two or more persons; (2) conspired; (3) to commit the offense of embezzlement and theft from a labor organization in violation of 29 U.S.C. § 501(c). In turn, the elements of embezzlement and theft from a labor organization in violation of 29 U.S.C. § 501(c), are: (1) a union officer or employee of the victim "labor organization"; (2) unlawfully deprived (embezzled, converted, stole, or abstracted); (3) the property or assets of said "labor organization"; and did so with (4) fraudulent intent.

3

mandatory restitution under 18 U.S.C. § 3663A; and an obligation to pay any applicable interest or penalties on fines and restitution not timely made.

## II.      U.S. Sentencing Guidelines

In the plea agreement, the parties contemplated that the defendant's offense level under the U.S. Sentencing Guidelines ("USSG") would be offense level 14 or 12 after giving either a two-level reduction for being a "minor participant" in the scheme under U.S.S.G. § 3B1.2(b), or a four-level reduction for being a "minimal participant" under U.S.S.G. § 3B1.2(a). The parties further contemplated that the defendant's final offense level would be offense level 12 or 10 after giving an additional two levels of credit for acceptance of responsibility. However, based on the facts in the statement of offense, the PSR writer chose not to include any reduction for a mitigating role under § 3B1.2 (PSR ¶¶ 26, 120). Thus, the relevant USSG provisions at issue here are:

| | | |
|---|---|---|
| U.S.S.G. § 2B1.1(a)(2) | Base Offense Level | 6 |
| U.S.S.G. § 2B1.1(b)(1)(F) | Loss >$150,000 ($205,421.82) | +10 |
| ~~U.S.S.G. § 3B1.2(b)~~ | ~~Mitigating Role/Minor Participant~~ | ~~-2~~ |
| U.S.S.G. § 3E1.1(a), (b) | Acceptance of Responsibility | -3[3] |

The PSR writer concluded (and the government agrees) that the defendant has a criminal history score of two, putting him in Criminal History Category II.

At Criminal History Category II and total offense level of 13, as included in the PSR, the recommended guideline imprisonment range is 15 to 21 months, with a fine range of $5,500 to $55,000.

---

[3] The plea agreement contemplated two levels of credit for acceptance of responsibility under U.S.S.G. § 3E1.1(a). However, because the PSR writer chose not to include any reduction for a mitigating role under § 3B1.2, the resulting offense level was 16, which triggered an additional one-point reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(b).

4

At Criminal History Category II and total offense level of 12, as contemplated by the government in the plea agreement, the recommended guideline imprisonment range is 12 to 18 months, with a fine range of $5,500 to $55,000.[4]

At Criminal History Category II and total offense level of 10, as contemplated by the defendant in the plea agreement, the recommended guideline imprisonment range is 8 to 14 months, with a fine range of $4,000 to $40,000.

As to the mitigating role adjustment, the Draft PSR (ECF No. 14 ¶¶ 26, 120) concluded that a reduction was not warranted because the defendant's "conduct appears to be that of an average participant[.]"  The Final PSR reaches the same conclusion.  The government previously filed an objection to the Draft PSR's lack of a mitigating role adjustment (ECF No. 15).  The government hereby incorporates herein by reference its objection to the lack of a mitigating role adjustment in the Final PSR.  The government further reiterates its position that a two-level reduction under U.S.S.G. § 3B1.2(b) for the defendant being a "minor participant" in the scheme is appropriate, but that any greater mitigating role adjustment, as may be requested by the defendant, is not appropriate and would cause unreasonable sentencing disparities between the defendant and Stacy Staples.[5]

---

[4] The PSR states that "[s]hould the Court agree with the Government, the total offense level would be 11, and the applicable guidelines range would be 10 months to 16 months incarceration (a Zone C sentence)" (PSR p. 34). However, under the government's proposal, the offense level prior to accounting for acceptance of responsibility would be 14.  Consequently, the defendant would receive only a two-level reduction for acceptance of responsibility, and not the additional one-point reduction under U.S.S.G. § 3E1.1(b).

[5] The plea agreement (ECF No. 6 ¶ 6, "Reservation of Allocution") reserves for the parties their ability to address questions from the PSR writer and the Court where there may be discrepancies between the calculations in the PSR and the plea agreement.

> The Government and your client reserve the right to describe fully, both orally and in writing, to the sentencing judge, the nature and seriousness of your client's misconduct, including any misconduct not described in the charges to which your client is pleading guilty, to inform the presentence report writer and the Court of any relevant facts, to dispute any factual inaccuracies in the presentence

### III.     The 18 U.S.C. § 3553(a) Factors Support a Sentence of Incarceration

The Court must impose a sentence that is sufficient but not greater than necessary to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, to protect the public from further crimes of the defendant, and to provide the defendant with needed educational or vocational treatment.   18 U.S.C. § 3553(a)(2).   The Court also must consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the sentencing range under the guidelines, any relevant policy statements, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to the victims.   18 U.S.C. § 3553(a)(1)-(7).

### A.     The Nature and Circumstances of the Offense and the Need for the Sentence to Reflect the Seriousness of the Offense

The defendant's participation in the fraudulent scheme was not a one-off event nor a crime of opportunity: it was a deliberate concerted offense, committed multiple times.   In at least thirty-four separate instances, the defendant worked with Owens to jointly fleece the labor union for whom Owens worked.   And, so far as the facts in the PSR reflect, though the defendant appears to have been earning a legitimate paycheck from other jobs during the time he committed the

---

report, and to contest any matters not provided for in this Agreement. The parties also reserve the right to address the correctness of any Sentencing Guidelines calculations determined by the presentence report writer or the court, even if those calculations differ from the Estimated Guidelines Range calculated herein. In the event that the Court or the presentence report writer considers any Sentencing Guidelines adjustments, departures, or calculations different from those agreed to and/or estimated in this Agreement, or contemplates a sentence outside the Guidelines range based upon the general sentencing factors listed in 18 U.S.C. § 3553(a), the parties reserve the right to answer any related inquiries from the Court or the presentence report writer and to allocute for a sentence within the Guidelines range, as ultimately determined by the Court, even if the Guidelines range ultimately determined by the Court is different from the Estimated Guidelines Range calculated herein.

instant fraud (*see* PSR ¶¶ 93), he nonetheless joined Owens in the embezzlement scheme to make additional easy money.

Relevant to this factor is the nature of the victim here: AFGE is a labor union whose funds are—literally—the money of its members, overwhelmingly government employees. AFGE represents over 670,000 employees of the federal government, about 5,000 employees of the District of Columbia, and a few hundred private sector employees, mostly in and around federal facilities. The pooled funds of members are—as AFGE's motto puts it, to allow the union "To Do For All That Which No One Can Do For Oneself." Those funds are intended for its operations, including supporting collective bargaining and advocating for the rights of government employees. That embezzlement of union funds is particularly wrongful is demonstrated by Congress's creation of the criminal statute at issue here specifically punishing those officers and employees who steal from a labor organization—separate and apart from other criminal statutes such as wire fraud, that criminalize such schemes regardless of the victim.

Considering these factors, the requested sentence would reflect the nature, circumstances, and seriousness of the offense.

### B. The Need to Promote Respect for the Law and to Deter the Defendant and Others from This Type of Criminal Conduct

A guidelines sentence of incarceration for the defendant's willing participation in a planned, deliberate, months-long fraud scheme is appropriate to promote respect for the law and to deter other would-be embezzlers, particularly in the District where many charities and non-profit organizations are at risk of suffering similar frauds. Additionally, such a sentence will also specifically deter the defendant from considering any future re-offenses.

C.     **The History and Circumstances of the Defendant**

The defendant deserves credit for early acceptance of responsibility and admitting his role in the offense before being formally charged. Also, as the PSR describes, the defendant has managed—to his credit—to overcome some undeniably challenging life circumstances that he faced earlier in his life. He has otherwise led a mostly-productive and responsible life, has pursued higher education, and is currently gainfully employed. The recommended sentence acknowledges and incorporates these past challenges, and the defendant's efforts to overcome them.

The recommended sentence also acknowledges, as accounted for in the USSG, the defendant's prior criminal record.

D.     **Unwarranted Sentencing Disparities**

The District of Columbia Circuit has recognized that there will "inevitably . . . [be] sentencing disparities and inequities that can be explained by little more than the identities of the sentencing judges." *United States v. Gardellini*, 545 F.3d 1089, 1096 (D.C. Cir. 2008); *see also United States v. Saez*, 444 F.3d 15, 19 (1st Cir. 2006) ("[W]ith different judges sentencing two defendants quite differently, there is no more reason to think that the first one was right than the second."). The Guidelines "reduce unwarranted federal sentencing disparities," *Freeman v. United States*, 564 U.S. 522, 525 (2011), by "creat[ing] a comprehensive sentencing scheme in which those who commit crimes of similar severity under similar conditions receive similar sentences." *Id.* at 533.

A sentencing court "necessarily g[ives] significant weight and consideration to the need to avoid unwarranted disparities" by "correctly calculat[ing] and carefully review[ing] the Guidelines range." *Gall v. United States*, 552 U.S. 38, 54 (2007). "[I]mposing a within-guidelines sentence

8

is the surest way to avoid unwarranted disparities." *United States v. White*, 737 F.3d 1121, 1145 (7th Cir. 2013).

Co-conspirator Owens, who organized and oversaw the entire scheme, was previously sentenced to a term of 15 months' imprisonment, which represented a below-guidelines sentence in contrast to the government's recommended sentence of 30 months. Staples, who was somewhat similarly-situated to the defendant in terms of their respective roles in the scheme, was previously sentenced to a term of three years of probation. As noted above, however, Staples participated in the scheme for a much shorter period of time than did the defendant, and received a significantly smaller sum of money. Moreover, unlike the defendant, Staples had no criminal history and was scored at Criminal History Category I. Accordingly, the government believes the recommended within-guidelines sentence is appropriate.

### E.  Restitution and Forfeiture

As part of the Information and plea agreement in this case, the defendant agreed to the entry of a forfeiture money judgment, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) and 21 U.S.C. § 853(p). Based upon the facts set forth in the statement of offense and the PSR, the forfeiture money judgment against him should be in the amount of $205,421.82. A proposed final order of forfeiture is attached as an exhibit to this Memorandum.

In addition to forfeiture, the defendant also should be ordered to pay restitution in the total amount of $205,421.82. Mandatory restitution applies in this case under 18 U.S.C. § 3663A.

**CONCLUSION**

WHEREFORE, for the foregoing reasons, the Court should sentence the defendant to a term of 15 months of imprisonment, followed by three years of supervised release, order restitution in the amount of $205,421.82, and issue a consent order of forfeiture with a money judgment in the amount of $205,421.82. This guidelines sentence is appropriate given all the § 3553(a) factors here. Such a sentence would be sufficient but not greater than necessary to achieve the purposes of sentencing.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
for the District of Columbia

By:     */s/ Brian P. Kelly*
BRIAN P. KELLY
Assistant United States Attorney
United States Attorney's Office
District of Columbia
D.C. Bar No. 983689
601 D Street NW
Washington, DC 20530
(202) 252-7503
Brian.Kelly3@usdoj.gov